## Herndon, et al. v. Brawner.

(Decided June 4, 1918.)

### Appeal from Franklin Circuit Court.

1. Municipal Corporations—Contracts for Street Improvement.—A contract for the improvement of a street made between the mayor of a city and the contractor is enforcible, as the mayor in cases of this sort makes the contract in behalf of the city.

2. Municipal Corporations—Street Improvement.—Ky. Statutes, sections 3453 and 3458, when taken together, mean that the defense that the work was not done according to contract shall not exempt the property from liability, but that the court trying the case shall render such judgment against the property as will do complete justice to the parties.

3. Municipal Corporations—Street Improvement—Contracts—Repairs —A contract which obligates the contractor to keep the street in repair for five years contemplates such repairs only as are

made necessary by the defectiveness of the work or of the materials, and not from unexpected causes as fire, flood or earthquake.

4. Municipal Corporations—Street Improvement—Liens Upon Abutting Property.—In suits to enforce liens upon abutting property for street improvements no personal judgment can be obtained against the property owner, and a revivor in the name of the heirs of the owner who died after the institution of the suit is sufficient, and an objection that the suit was not revived in the name of the personal representative of the owner is not available.

5. Municipal Corporations—Street Improvement—Contractor.—If an improvement is done in accordance with the statutory authority as interpreted by this court, the contractor will not be liable for the consequential damages which may be done to the abutting property because of the making of the improvement according to the plans adopted and accepted by the city council, and a counterclaim against him in a suit to enforce a lien against abutting property based upon such consequential damages was properly disallowed. Nor can such counter-claim in that character of suit be maintained against the municipality if the suit was brought by it, nor can it be brought into the suit by cross-petition in an effort to assert such counter-claim.

6. Municipal Corporations—Street Improvement—Liability of Contractor.—The rule just announced would not apply if the city, not as a municipality, but as assignee of the contractor, should bring the suit, for in that case any counter-claim which might be asserted against the contractor may be asserted against the city as his assignee; nor does the rule prevent the property owner from recovering consequential damages of the municipality in an independent suit brought within the proper time.

JOHN B. LINDSEY for appellants.

GUY H. BRIGGS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In November, 1899, the common council of the city of Frankfort, a city of the third class, passed an ordinance providing for the improvement of Second street, between the east line of Conway street and the west line of Logan street, by grading and paving it with vitrified brick. The improvement provided for was to be "at the grade heretofore reported by the city engineer and shown by profile now in the city clerk's office and hereby established as the proper grade for said pavement." The ordinance does not show what engineer established the grade referred to therein but the proof shows that it was D. M. Woodson. Shortly after the passage of the ordinance

Woodson went out of office and the city council elected one R. A. Frazier to the office of city engineer, and he was in office when the contract for the improvement was let. It is stipulated in the contract that the work was "to be constructed throughout and completed in every detail according to the profile and specifications made therefor by R. A. Frazier, city engineer." In the advertisement for the letting of the contract is was stated that the specifications for the work had been prepared by R. A. Frazier and were all filed in the city clerk's office, but in fact he had neither made nor filed any specifications relating to any improvement of Second street, nor was the improvement ordered or made under any plans or specifications filed by him, but the work was done under his directions which in a few slight respects departed from Woodson's filed specifications. The appellee, Brawner, who was the plaintiff below, was the successful bidder for the work and the contract entered into with him was "between W. S. Dehoney, mayor of the city of Frankfort, party of the first part, and Walter F. Brawner, party of the second part." The work was completed, reported to and accepted by the city council and apportionment warrants were made out by the engineer against the owners of the property abutting upon the improvement. The contract provided that the city council should pay one-third of the cost of the work and the property owners on either side of the street should each pay one-third thereof.

Miss Hallie Herndon owned property on the north side of the improved portion of the street and her portion of the cost of the improvement as apportioned and approved by the city council was $667.29, and the plaintiff brought this suit against her on December 24, 1901, seeking to enforce his lien against her property for the amount assessed against it.

A demurrer filed to the petition was overruled, followed by an answer in which many defenses were relied upon, and it was sought by counter-claim to recover $1,500.00 against plaintiff as alleged damages to defendant's property because of the construction of the work in such manner as to cause the water from the street to overflow the sidewalk and run upon plaintiff's property, damaging a number of small frame business houses located thereon. This damage was alleged to have been produced for only a distance of about 85 feet west from

Shelby street and not along the entire length of defendant's property.

Among the defenses relied upon in the answer were, that at the time of the filing of the suit all of Second street between Conway and Logan had not been completed according to the contract, although it was not denied but that the portion of it running in front of defendant's property had been completed; that the advertisement for the letting of the work did not conform to the terms of the ordinance because it did not confine the work between the east line of Conway street to the west line of Logan street, but said that it would extend from the west side of Conway street to the east side of Logan street; that the work was not done accordng to the grade established by the ordinance providing for the improvement but that it was changed and altered by the mayor and city engineer as the work progressed; that the ordinance provided that the work should be guaranteed by the contractor for five years, which it was claimed was contrary to law and vitiated the contract; that the entire improvement extending the whole length of the street ordered to be improved had not been completed within the time specified by the contract; that the contract was not entered into by the city of Frankfort but only by its mayor, W. S. Dehoney; that all parts of the street had not been improved according to the ordinance and according to the contract because there was no brick pavement between the rails of the street car line in the center thereof and for two feet from the outside of the rails; that the contractor, Walter Brawner, had not filed with the board of public works the affidavit required by section 3444 of the Kentucky Statutes, being a part of the charter of cities of the third class, disclosing the names of all persons directly or indirectly interested in the contract and stating that none of the parties interested in the contract, including himself, was forbidden by the charter of cities of the third class from entering into any contract with the city, and that the improvement was not an original construction of the street but was in the nature of repair work and reconstruction.

As hereinbefore stated, a demurrer was filed to all of the answer except the paragraph which contained the counter-claim against the plaintiff. The cause dragged its weary way through the court until 1905, when the defendant, Miss Hallie Herndon, died, leaving the appel-

lants, W. C. Herndon, Susan M. Castleman and Lavinia H. Morgan, as her only heirs at law. On the 24th day of April, 1905, there was an order entered in the cause suggesting the death of the defendant and reviving the case against her abovementioned heirs. After this a number of orders were taken in the case until 1911, when a plea in abatement was filed upon the ground that there had never been a legal revivor against the defendant's heirs, nor had there been any revivor against W. C. Herndon, one of the heirs and decedent's qualified administrator. This plea was overruled and an amended answer, set-off and counter-claim was offered in which is was sought to recover against the city of Frankfort, as well as the plaintiff, the damages asserted in the original counter-claim, but the court declined to permit that pleading to be filed and upon a final trial of the cause, on January 27, 1917, fifteen years, one month and three days from the date of the filing of the suit, a judgment was rendered dismissing the counter-claim and ordering an enforcement of the lien upon the property for the assessment with interest from the day it was made, and to reverse that judgment the defendants prosecute this appeal.

All of the defenses urged here except the right to maintain a counter-claim against the contractor and the city for the consequential damages done to defendant's property because of the character of improvement, but not resulting from any negligent manner of doing the work, were relied upon and urged as defenses in the case of Lindsey v. Brawner, 29 Ky. Law Rep., 1236, which was a suit by the same plaintiff against an abutting property owner on the same side of Second street to subject his property to a lien for the apportionment of the price of the work assessed against it. The same contract for the same work was involved in that case as is involved in the instant one, but the property involved therein was one square west of that of the defendants here. It was held in that case, construing the same contract and passing upon the same defenses, that sections 3451, 3453 and 3458 of the statute when construed together allowed the contract to be made and entered into in the manner complained of and when ratified and approved by the city council, as was done in this case, it to all intents and purposes complied with all the requirements of the statute giving a lien upon the abutting property to the con-

tractor for the part of the contract price apportioned to it. It was also held in that case that the contract for the work was in reality one made by the city, although entered into by the mayor for the city, and that the fact that the space in the middle of the street occupied by the street railroad track was not paved with brick constituted no defense, nor did the requirement concerning the repair of the street for five years by the contractor affect the lien against the abutting property. In construing the sections of the statute, *supra,* the court in the Lindsey case said:

"It will thus be seen that by the statute the work must be performed under the supervision of the mayor and engineer and subject to the acceptance of the council; that when the council shall have passed an ordinance and made a contract pursuant to it, and shall have received the work as done according to contract, then the liability of the owners of the property chargeable with the cost shall be fixed, and in such cases the defendant shall not be allowed to make the defense that the work was not done according to contract, as against the plaintiff in the action, but that the court trying the case shall have the power to correct any mistake or error of the city engineer, or of the common council, so as to do complete justice to all parties."

The court then refers to the cases of Gleson v. Barrett, 106 Ky. 125; Orth v. Park, 117 Ky. 779, and Lindenberger Land Co. v. Park, 27 Ky. Law Rep. 437, then adds: "The case falls within the rule thus laid down. The provision in section 3453 that in such cases the defendant shall not be allowed to make defense that the work was not done according to contract, is to be read in connection with the provision in section 3458 that the court trying the case shall have the right to correct any error or mistake made by the city engineer or council so as to do complete justice to all parties. The meaning of the two sections taken together is that the defense that the work was not done according to contract shall not exempt the property from liability, but that the court trying the case shall render such judgment against the property as will do complete justice to the parties."

It must be admitted that the criticism which counsel for appellants make of the interpretation given to the sections of the statute in that opinion is not altogether without merit, and if the question were being

presented now for the first time we would not be inclined to adopt the interpretation there given without some hesitation, but the Lindsey case has been followed since its rendition and the doctrine therein announced has been approved in the cases of Nell v. Power, &c., 32 Ky. Law Rep., 952, and City of Lexington v. Walby, &c., 32 Ky. Law Rep. 116. So that the improvements of public ways in cities of the third class have been governed by the statute as construed and followed in the Lindsey case, and we are admonished that under the doctrine of *stare decisis* we should not now depart from that construction, for after all the completed statute is the construction given to it by the highest court within the jurisdiction where it prevails, and since it would have been competent for the legislature to pass a statute conforming to the construction given to the sections, *supra,* in the Lindsey case, no hardship can result from a continued adoption of that construction. This being true the only remaining points urged for a reversal are that the case was improperly revived and the refusal of the court to permit a recovery either against plaintiff or the city upon the counter-claim.

What we have heretofore said is sufficient to show that the suit was properly revived against the heirs of the original defendant. The insistence that it should have been revived against her administrator is without merit, since no personal judgment could be obtained against the owner of the abutting property in cases like this, nor was any attempted to be rendered.

Briefly considering the objections to the disallowance of the counter-claim, it is the settled policy of the law generally, and which prevails with this court, that in this character of case the municipality, although it might be liable for damages in an independent suit, as we shall see, can not be made to respond in such damages upon a cross-petition or counter-claim in a suit like this brought for the purpose of enforcing the lien against the abutting property for the price of the improvement. The reason assigned by the law for disallowing damages as a defense in this character of proceeding is that the amount sought to be collected is in the nature of a tax and it can not be offset by independent causes of action between the city and the property owner. Bayes v. Town of Paintsville, 166 Ky. 676; Bodley, &c., v. Finley's Ex'r, &c., 23 Ky. Law Rep. 851, and Board of Coun-

cil of City of Frankfort v. Brislan, 126 Ky. 477. If it would be incompetent to allow such counter-claim where the suit to enforce the lien is brought in the name of the city, it certainly can not be insisted that such a claim would be allowed on a cross-petition against the city contained in the defendant's answer, although the city may have been made a party to the suit prior to the filing of the cross-petition. If the abutting property suffers consequential damage because of the plan of construction adopted by the city, the owner of the property might have a remedy against it—a question that is not here presented—but such remedy must be prosecuted in an independent suit and not be relied upon as a defense to the character of suit we have here.

In the two cases of Bodley, &c., v. Finley's Ex'r, &c., and Board of Council of the City of Frankfort v. Brislan, *supra*, it was held that a counter-claim might be maintained in this character of suit against the contractor when such counter-claim or set-off arose and grew out of matters independent of the execution of the contract. In the Brislan case the counter-claim sought to be asserted was for tort committed by the contractor by trespassing upon the defendant's property and attempting to improve it as a part of the street. In the Bodley case the defense was in the nature of a set-off, being a debt which the property owner held against the contractor. The Brislan suit was brought by the city not in its municipal capacity but as assignee of the contractor, and this court held that "as assignee of the contractor's claim the city occupies no better position than the contractor and appellee to set up against it any claim for damages that he could have asserted against the contractor."

In this case, however, the alleged claim for damages is not bottomed upon facts independent of the contract, but grows out of the doing of the work itself, and if the contractor in such instances could be made to respond in damages it would deter many persons from bidding for such contracts, and municipalities in carrying out their governmental duties to improve their highways would find great difficulty in securing bidders and having the price increased so as to cover the possible loss which might be sustained by damage suits brought by abutting property owners. Our conclusion, therefore, is that the damages sought to be recovered by the coun-

ter-claim, both as against the contractor and the city, were properly disallowed.

This dispenses with the necessity of passing upon the correctness of the ruling of the court in refusing to submit to the jury the issue raised by the counter-claim.

Wherefore, the judgment is affirmed.